UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SEVEN C'S PROPERTIES LLC, ET AL. | : | DOCKET NO. 18-cv-804 |
| VERSUS | : | UNASSIGNED DISTRICT JUDGE |
| KINETICA PARTNERS, LLC, ET AL. | : | MAGISTRATE JUDGE KAY |

## REPORT AND RECOMMENDATION

Before the court is a Motion to Remand filed by nearly all of the plaintiffs in this matter (Seven C's Properties, LLC; Stroebner Enterprises, LLC; Martin O. Miller, II, LLC; Marie Diane Miller, LL; Boulet Family, LLC; and EKM, LLC).[1] Doc. 14. Defendant Tennessee Gas Pipeline Company, LLC ("TGP") opposes remand. Doc. 20. This motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the motion be **GRANTED.**

### I.
#### BACKGROUND

This case arises from a 1957 Right of Way Agreement ("ROW") entered into between Tennessee Gas Transmission Company and Dr. M.O. Miller, to construct a pipeline in Cameron Parish, Louisiana. *See* doc. 1, att. 2, pp. 46–52. The case began as two separate suits filed in the

---

[1] The above plaintiffs are jointly represented and were plaintiffs in the Seven C's suit, described below. The other plaintiffs in this suit are Max Kaplan Succession and P&A Miller, LLC, both plaintiffs from the Miller suit and both represented by another attorney. The two groups of plaintiffs filed separate suits in the state court, which were later consolidated as described below. The Miller plaintiffs do not join in the motion to remand. For ease of reference, however, the court still refers to movants collectively as "plaintiffs."

38th Judicial District Court, Cameron Parish, Louisiana, by the heirs of Dr. Miller. The suits ("Miller suit" and "Seven C's suit") were filed, respectively, in September 2014 and September 2015 against Tennessee Gas Transmission Company and its successors, including TGP and Kinetica Partners, LLC ("Kinetica"). *See id.* at 2–6 (Seven C's petition); doc. 16, att. 1, pp. 2–4 (Miller petition); doc. 1, att. 2, pp. 12–13 (providing dates of filing). The suits were consolidated at the plaintiffs' joint and unopposed motion on November 23, 2016. Doc. 1, att. 2, pp. 12–15.

In the original suits, plaintiffs alleged that defendants had breached the ROW Agreement by failing to restore bridges, levees, and plugs damaged in 2005 Hurricane Rita. On May 17, 2018, they filed an amended and restated complaint against TGP and Kinetica, in which they also brought claims relating to the defendants' maintenance of the pipeline canal. Doc. 1, att. 4, pp. 48–62.

In the amended petition Plaintiffs allege that the defendants have failed to maintain the canal in accordance with the express terms of the ROW Agreement as well as the implied obligations set forth in the Louisiana Civil Code suppletive rules regarding servitudes. *Id.* at 56 (citing La. Civ. Code art. 697 *et seq.*). They also allege negligence in the defendants' use, operation, and maintenance of the canal. *Id.* at 57. On June 15, 2018, TGP removed the action to this court, with Kinetica's consent, on the basis of federal officer jurisdiction, 28 U.S.C. § 1442, and federal question jurisdiction, 28 U.S.C. § 1331. Doc. 1; *see* doc. 1, att. 5. Plaintiffs filed a motion to remand on July 16, 2018, asserting that there is no legitimate basis for federal jurisdiction over its state-law claims. Doc. 14. They also request attorney fees pursuant to 28 USC § 1447(c). *Id.* at 3. TGP opposes remand. Doc. 20.

## II.
### LAW & ANALYSIS

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and by statute." *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013) (quotation omitted).

Generally, a defendant may remove a civil action to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). However, the federal district court must remand the action to state court if it finds that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

TGP asserts two bases for subject matter jurisdiction in its notice of removal: federal officer removal jurisdiction and federal question jurisdiction. Doc. 1. The plaintiffs challenge jurisdiction entirely. Doc. 14. We therefore review the plaintiffs' challenges to determine whether the matter ought to be remanded for lack of subject matter jurisdiction.

### A. *Federal Officer Removal Jurisdiction*

Under 28 U.S.C. § 1442(a), a state court suit may be removed to federal court if it is against the U.S. government, including agencies and officers of the government "or any person acting under that officer." Accordingly, federal officer jurisdiction may be exercised even over cases brought against private parties if they are sued for conduct committed under the direction of federal authorities. *Crutchfield v. Sewerage and Water Bd. of New Orleans*, 829 F.3d 370, 375 (5th Cir. 2017). This statute arises from the Supremacy Clause and is designed to prevent state courts from interfering with federal officials' enforcement of federal law. *Willingham v. Morgan*, 89 S.Ct. 1813, 1815–16 (1969). Unlike with other bases for removal, where doubts must be resolved in favor of remand, the broad reach and liberal construction of § 1442(a) compel the court to review it "without a thumb on the remand side of the scale." *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462 (5th Cir. 2016). Still, the defendant retains the burden of showing that jurisdiction is proper under the statute. *Bartel v. Alcoa S.S. Co., Inc.*, 805 F.3d 169, 172 (5th Cir. 2015).

To justify removal under this statute, a party must show that: (1) it is a person under the statute's meaning; (2) it acted "pursuant to a federal officer's directions;" and (3) it can articulate a "colorable federal defense." *Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017). TGP satisfies the first factor, given the acceptance of corporate entities as private persons. *E.g.*, *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998). We therefore turn to the second and third factors.

A private individual or corporate entity satisfies the second factor when he shows that he acted pursuant to a federal officer's direction and that there is a causal nexus between these actions and the plaintiff's claims. *Id.* at 398; *Zeringue*, 846 F.3d at 793. The Fifth Circuit recently observed that this requirement was seemingly broadened when Congress amended § 1442(a) in 2011 to encompass acts "for *or relating to* any act under color of [federal] office." *Latiolais v. Huntington Ingalls, Inc.*, __ F.3d ___, 2019 WL 1107063, at *2 (5th Cir. Mar. 11, 2019) (emphasized language inserted through amendment). The court emphasized, however, that it had only relaxed the causal nexus standard under the amended language for strict liability claims and not for negligence. *Id.* at *2–*3. Even under the amended language, the court continues to hold, mere federal involvement does not satisfy the nexus test. *Savoie*, 817 F.3d at 462 (citing *Bartel*, 805 F.3d at 172–74). Instead, the defendant must show that it acted pursuant to the government's direction or control **and** that these acts caused the plaintiff's injuries. *Id.* In this regard, the relationship typically must involve "subjection, guidance, or control" by the federal actor and, at a minimum, requires "an effort [by defendant] to assist, or to help carry out, the duties or tasks of the federal superior." *Zeringue*, 846 F.3d at 792 (internal quotations omitted). In other words, the defendant must show actual federal supervision/control of its work rather than mere compliance with applicable federal regulations and susceptibility to federal oversight. *City of Walker v. Louisiana ex rel. Dep't of Transp. and*

*Dev.*, 2017 WL 3431922, at *15 (M.D. La. Jun. 28, 2017).

TGP asserts that its construction, maintenance, and operation of the pipeline were conducted under direction of the Federal Energy Regulatory Commission ("FERC") and its predecessor, the Federal Power Commission ("FPC"), through the authority granted to those agencies under the Natural Gas Act ("NGA"), 15 U.S.C. § 717 *et seq.* Under the NGA, it maintains, "*nothing* may be done with respect to its pipeline, whether setting rates or changing any aspect of operations," unless under FERC's direction. Doc. 20, p. 6 (emphasis in original); *see* doc. 1, pp. 4–9. Accordingly, TGP asserts that the amended petition "attacks activities undertaken under the direction of the FERC, including the siting, construction, and operation of interstate nature gas pipeline facilities." Doc. 1, pp. 4–8.

Plaintiffs argue that none of their claims arises from construction, operation, or abandonment of the pipeline. Doc. 21, p. 4. Instead, they assert, their contract and tort claims arise only from "damages to land and improvement surrounding the pipeline." *Id.* As TGP shows, however, the construction and operation of its pipeline were subject to federal regulation under the NGA. *See* doc. 1, pp. 7–9. That statute provides that pipeline construction and operation can only be performed under a FERC-issued certificate of public convenience and necessity. 15 U.S.C. § 717f(c)(1)(A). The NGA applies not only to the pipeline itself but also to associated facilities, and canals are recognized as appurtenances of pipelines. *Id.* at § 717f(a); *Terrebonne Par. Sch. Bd. v. Columbia Gulf Trans. Co.*, 290 F.3d 303, 314 (5th Cir. 2002). Accordingly, TGP maintains that "every aspect" of its activities with respect to the canal and pipeline had to be "in furtherance of the 'public convenience and necessity' as certified by FERC" and that all rates charged by TGP for its pipeline activities, including rates attributable to canal maintenance, had to be "just and reasonable pursuant to FERC's mandate to protect . . . the public interest." Doc. 24, p. 4.

Despite its broad assertions, TGP has not articulated any requirement, demand, order, regulation, or request by a federal agency that would prevent it from complying with its contractual obligations or acting in a non-negligent manner. To support a causal nexus under § 1442(a), the government's oversight must have actually caused the alleged negligence. *See Savoie*, supra, 817 F.3d at 463 (as cited in *Latiolais*, 2019 WL 1107063 at \*3) (even though government contracts required defendant to build ships with asbestos, government did not control shipyard's safety procedures and the Navy "neither imposed any special safety requirements . . . nor prevented the shipyard from imposing its own safety procedures"). The mere fact that FERC or its predecessor might have approved the pipeline construction and management scheme alleged to have caused the plaintiffs' damages does not show that the statutes and regulations at issue prevented TGP from pursuing a maintenance scheme that would not have resulted in such damages. Accordingly, TGP cannot satisfy this factor of federal officer jurisdiction and there is no need to consider whether it can show a colorable federal defense.

### B. *Federal Question Jurisdiction*

Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 107 S.Ct. 2425, 2429 (1987). This rule recognizes the axiom "that a plaintiff is master of his complaint and may generally allege only a state law cause of action even where a federal remedy is also available." *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). A case "may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if

both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust*, 103 S.Ct. 2841, 2848 (1983).

Federal question jurisdiction is most frequently invoked by plaintiffs asserting a cause of action created by federal law. A state law cause of action that necessarily turn on a substantial federal question may also arise under federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S.Ct. 2363, 2367 (2005). The mere presence of a federal issue in a state law claim, however, is insufficient to create federal question jurisdiction. *Merrell Dow Pharms. Inc. v. Thompson*, 106 S.Ct. 3229, 3234 (1986). For a state law claim to support federal subject matter jurisdiction, a federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S.Ct. 1059, 1065 (2013). "Where all four of these requirements are met . . . jurisdiction is proper because there is 'a serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 125 S.Ct. at 2371).

Plaintiffs' state-law claims include allegations that defendants breached "the express terms of the ROW Agreement in addition to the implied obligations therein pursuant to the suppletive rules regarding servitudes, as set forth in the Louisiana Civil Code arts. 679, *et seq.*" Doc. 1, att. 4, p. 56. As an example of this breach, plaintiffs allege that defendants failed to "[m]aintain the canals and their banks to prevent erosion of the surrounding property." *Id.* Under this claim, plaintiffs request injunctive relief "in the form of abatement and restoration of land loss and to maintain and repair the canal banks." *Id.* They also raise a general negligence claim under Louisiana Civil Code article 2315. *Id.* at 57.

TGP argues that these claims necessarily implicate questions of federal law because the ROW did not expressly provide for maintenance. Doc. 1, pp. 12–14. Accordingly, it reasons that evaluating TGP's duty to maintain the canal will necessarily require interpretation and reliance on federal law, specifically Section 10 of 1899 Rivers Harbors Act ("RHA"). *Id.* at 13–17. It also asserts that plaintiffs' request for injunctive relief encroaches on the federal authority of the NGA. *Id.* at 14–15.

   1. *Section 10 of the RHA*

TGP argues that plaintiffs' claims necessarily implicate the RHA because TGP was obligated under that statute to obtain a permit from the Corps of Engineers before constructing its pipeline. Doc. 1, pp. 15–17. When the original permit was obtained in 1957, the Chief of Engineer recommendation included a letter that indicated the approved construction design "must be rigidly adhered to." Doc 1, att. 6, p. 25. TGP contends that, because the original permit "did not require *or authorize* any continuing maintenance or replacement of eroded material," this case will necessarily turn on first defining what the Corps permit required. Doc. 1, p. 16 (emphasis in original).

This is an anticipated federal defense and does not create a basis for jurisdiction. TGP attempts to analogize this matter to the Fifth Circuit's recent decision in *Board of Commissioners of Southeast Louisiana Flood Protection Authority- East v. Tennessee Gas Pipeline, et al.*, 850 F.3d 714, 723 (5th Cir. 2017) (hereafter "*Board of Commissioners*"). There the court upheld a finding of federal question jurisdiction by holding that plaintiff's negligence and nuisance claims "necessarily raise[d]" a federal issue sufficient to justify federal jurisdiction. *Id.* at 725–26. In that case, however, the federal law implicated by the petition was clear. There a municipal authority alleged that the defendants had an "obligation not to alter the levee systems built by the United

States." *Id.* at 722. The Fifth Circuit readily connected this obligation with the RHA, which "was obviously intended to prevent obstructions in the Nation's waterways." *Id.* at 722, 727 (internal citation omitted). In the instant matter, TGP has not provided us with any federal standard that we could so readily conclude formed the basis for plaintiffs' claims.

Accordingly, TGP's argument that it lacked a particular state law duty to maintain the canal does not show the existence of such a duty under federal law or elevate the negligence claim to one necessarily raising a substantial federal issue. We distinguish a municipality's claims related to loss of coastline, based on clear federal standards, from the claims alleged by the private plaintiffs in the instant matter. Plaintiffs do not appear to have intentionally drawn upon any federal law in crafting their complaint and as the removing party, TGP bears the burden of showing that federal subject matter jurisdiction exists in this case. They have not done so to our satisfaction

### 2. NGA

TGP points to plaintiffs' request for injunctive relief "in the form of abatement and restoration of land loss and to maintain and repair the canal banks," [doc. 1, att. 4, p. 56] as necessarily implicating the federal laws concerning "the construction, operation, and abandonment" of its pipeline facilities. Doc. 1. p. 14. TGP alleges that NGA constitutes a "comprehensive scheme of federal regulations" and that plaintiffs' claim must necessarily rely on it. *Id.* at 15.

TGP pointed to similar provisions of the NGA in an attempt to establish federal question jurisdiction in *Plaquemines Parish v. Hilcorp Energy Company, et. al.*, 2015 WL 1954640 (E.D. La. Apr. 29, 2015). In granting remand, the Eastern District characterized TGP's argument as "an indirect attempt to show, without tackling directly the hard-to-meet test for complete preemption, that the NGA completely preempts state law." *Id.* at *5 (citation omitted). We agree with the

Eastern District's assessment. TGP has not articulated any specific standard set by the NGA that provides the basis for plaintiffs' claims. Accordingly, it fails to meet the burden of showing the NGA is necessarily implicated in this case.

### C. Attorney Fees

The decision to grant or deny attorney's fees is within the discretion of the court and an award of such fees and costs is not automatic under 28 U.S.C. § 1447(c). *Valdes v. Wal-Mart Stores, Inc.,* 199 F.3d 290, 292 (5th Cir.2000). The Fifth Circuit has stated that attorney's fees "should only be awarded if the removing defendant lacked 'objectively reasonable grounds to believe the removal was legally proper.'" *Hornbuckle v State Farm Lloyds*, 385 F.3d 538 (5th Cir.2004) (citing *Valdes,* 199 F.3d at 293). Finding an objectively reasonable basis for seeking removal, we recommend denying plaintiff's request for attorney fees.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Remand be **GRANTED** and the request for attorney fees be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 13th day of March, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE